IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

ZDENEK BAKALA,                                )
                                              )
                    Plaintiff,                )
                                              )        No. 9:18-cv-2590-DCN-MGB
        vs.                                   )
                                              )        **ORDER**
PAVOL KRUPA, ADAM SWART, and                  )
CROWDS ON DEMAND LLC,                         )
                                              )
                    Defendants.               )
_____)

    The following matter is before the court on United States Magistrate Judge Mary

Gordon Baker's report and recommendation ("R&R"), ECF No. 197, that the court grant

plaintiff Zdenek Bakala's ("Bakala") motion for default judgment, ECF No. 181.  For the

reasons set forth below, the court adopts in part the R&R, grants in part the motion for

default judgment, and holds the motion in abeyance with respect to the tortious

interference claim and a damages determination until the court can hold an evidentiary

hearing on the matter.

## I.  BACKGROUND

    The R&R ably recites the facts, and the parties did not object to the R&R's

recitation thereof.  Therefore, the court will only briefly summarize material facts as they

appear in the R&R for the purpose of aiding an understanding of its legal analysis.  This

matter arises out of defendants Pavol Krupa ("Krupa"), Adam Swart ("Swart"), and

Crowds on Demand, LLC's ("Crowds on Demand") (collectively, "defendants") alleged

efforts to extort Bakala and interfere with his business affairs.  ECF No. 15, Amend.

Compl.  Bakala is a citizen of both the United States and the Czech Republic and a

1

resident of Hilton Head, South Carolina.  Krupa is a Slovakian citizen residing in the Czech Republic.  Swart is a resident of California and founder and chief executive officer of Crowds on Demand.  Among other things, Crowds on Demand hires actors to play the part of protestors or supporters at political rallies.

In his amended complaint, now the operative complaint, Bakala alleges that Krupa launched a "harassment campaign" intended to defame Bakala via, inter alia, social media accounts, telephone calls to his business affiliates, and fake demonstrations in front of Bakala's homes.  ECF No. 15.  Among other things, the harassment campaign falsely accused Bakala of being a "criminal" who "brib[ed] government officials" to "cheat[] blue[-]collar Czech miners out of their homes."  Id. at 17–18.  Krupa hired Swart and Crowds on Demand (the "Swart Defendants") to execute this supposed harassment campaign and create a façade of negative public opinion of Bakala.  In exchange for ceasing the harassment campaign against Bakala, Krupa demanded that Bakala pay him 500 million crowns, approximately $23 million.  Bakala refused to meet this demand.  Instead, on September 21, 2018, Bakala filed the instant action against defendants, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), defamation, and tortious interference.  ECF No. 1; see ECF No. 15.

Bakala filed proof of service of the amended complaint as to the Swart Defendants on October 15, 2018 and October 17, 2018.  ECF Nos. 16–19.  On November 13, 2018, the Swart Defendants filed a motion to dismiss Bakala's claims in their entirety.  ECF No. 26.  On November 30, 2018, Bakala filed a motion to stay the case until Krupa had been served and given an opportunity to respond to the amended complaint.  ECF No. 32.  On March 8, 2019, Bakala filed proof of service as to Krupa.

ECF No. 53.  On March 14, 2019, Krupa filed a motion for an extension of time to file his answer, ECF No. 56, which the court granted that same day, ECF No. 58.  Despite this extension, Krupa did not timely file an answer.

On October 24, 2019, this court held a status conference.  ECF No. 95.  During that conference, the parties explained that Krupa had yet to make an appearance, but that Bakala and the Swart Defendants were close to reaching a settlement agreement. Accordingly, this court ordered Krupa to serve a responsive pleading to the amended complaint within 21 days of the status conference.  ECF No. 96.  On January 6, 2020, Bakala reached a settlement with the Swart Defendants,[1] leaving Krupa as the only remaining defendant.  ECF No. 188-3.

On November 19, 2019, Krupa filed a document entitled "Answer to the Complaint/Response to the Plaintiff Action."  ECF No. 98.  In that pleading, Krupa addressed some of the amended complaint's allegations, generally denied all of them, and objected to this court exercising personal jurisdiction over him.  Bakala timely filed a motion to strike this pleading, asserting that it failed to comply with the requirements of the Federal Rules of Civil Procedure.  ECF No. 101.  The Magistrate Judge issued an R&R on March 30, 2020, recommending that the court deny Krupa's preliminary challenge to the court's exercise of personal jurisdiction over him.  ECF No. 140.  The

_____

[1] The settlement agreement provides, inter alia, that Bakala releases all claims against the Swart Defendants and that the Swart Defendants will issue a scripted public statement apologizing for the "hostile campaign" against Bakala, cease any actions connected with that campaign against Bakala and refrain from such actions in the future, and provide Bakala certain requested information and documents related to communications with Krupa.  ECF No. 188-3.  The settlement agreement does not provide Bakala any monetary damages to compensate for injuries he suffered from the harassment campaign.

court adopted that R&R on May 8, 2020. ECF No. 147. On May 11, 2020, the Magistrate Judge granted Bakala's motion to strike Krupa's pleading and, in doing so, ordered Krupa to file and serve a new answer within 21 days. ECF No. 149. Nevertheless, Krupa again failed to respond.

Bakala requested an entry of default against Krupa on June 5, 2020, ECF No. 157, which the clerk of court entered on June 8, 2020, ECF No. 159. On January 5, 2021, Bakala filed the instant motion for default judgment. ECF No. 181. Krupa failed to timely respond. On March 5, 2021, the Magistrate Judge issued an R&R, recommending that the court grant Bakala's motion for default judgment, schedule an evidentiary hearing to determine the appropriate amount of damages, and order Bakala to show cause as to why injunctive relief is an appropriate remedy under 18 U.S.C. § 1964. ECF No. 197. On March 19, 2021, Bakala responded to the R&R. ECF No. 198. Krupa did not file any objections or a response to the R&R. As such, the motion for default judgment is now ripe for review.

## II.  STANDARD

### A.  Order on Report and Recommendation

The magistrate judge only makes a recommendation to the court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court. Id. at 270–71. The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection

4

is made.  Id.  However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the magistrate judge's proposed findings.  Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

### B.  Default Judgment

Securing a default judgment is a two-step process.  First, upon a defendant's failure to plead or otherwise defend within the permissible period for response, a plaintiff must file a motion requesting an entry of default from the clerk of court.  Fed. R. Civ. P. 55(a).  Second, where the plaintiff's claim is not for a sum certain, she must "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).  After a court has received an application, Rule 55 gives it great discretion in determining whether to enter or effectuate judgment, including the power to: "[ ]conduct an accounting; [ ]determine the amount of damages; [ ]establish the truth of any allegation by evidence; or [ ]investigate any other matter."  Id.; see also United States v. Ragin, 113 F.3d 1233 (4th Cir. 1997).

Once the clerk has entered default against a defendant, the court, in considering the plaintiff's application for default judgment, accepts a plaintiff's well-pleaded factual allegations as true.  See DIRECTV, Inc. v. Rawlins, 523 F.3d 318, 322 n.2 (4th Cir. 2008) ("Due to [the defendant's] default, we accept [the plaintiff's] allegations against

him as true.") (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001)).  However, the defendant is not held to have admitted conclusions of law, Ryan, 253 F.3d at 780 (citing Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)), or allegations that concern only damages, Dundee Cement Co. v. Howard Pipe & Concrete Prod., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983) (citing Pope v. United States, 323 U.S. 1 (1944)).

Thus, a court considering default judgment must still determine if the established factual allegations constitute a legitimate cause of action and provide a sufficient basis the relief sought.  See Ryan, 253 F.3d at 780 ("The court must, therefore, determine whether the well-pleaded allegations in Appellants' complaint support the relief sought in this action."); see also Silvers v. Iredell Cty. Dep't of Soc. Servs., 2016 WL 427953, at *4 (W.D.N.C. Feb. 3, 2016), aff'd, 669 F. App'x 182 (4th Cir. 2016).  "The party moving for default judgment has the burden to show that the defaulted party was properly served and that the unchallenged factual allegations constitute a legitimate cause of action." Harris v. Blue Ridge Health Servs., Inc., 388 F. Supp. 3d 633, 638 (M.D.N.C. 2019) (internal citations and quotation marks omitted).  If the court determines that the allegations entitle the plaintiff to relief, it must then determine the appropriate amount of damages.  Id.  In determining the appropriate damages, the court may conduct an evidentiary hearing.  Fed. R. Civ. P. 55(b) (2); CT & T EV Sales, Inc. v. 2AM Grp., LLC, 2012 WL 1576761, at *2 (D.S.C. May 2, 2012).  The court need not do so, however, if the damages can be ascertained based on detailed affidavits or documents attached to the plaintiff's motion.  Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians, 155 F.3d 500, 507 (4th Cir.1998) ("[I]n some circumstances a district court entering a

default judgment may award damages ascertainable from the pleadings without holding a hearing.").

### III.   DISCUSSION

Bakala argues that he is entitled to default judgment on all claims and a total damages award of $73,358,718.00, plus reasonable attorneys' fees and expenses. Specifically, Bakala seeks damages in the amount that Krupa tried to extort from him— $23 million, plus the amount that Krupa paid to the Swart Defendants to continue the harassment campaign against Bakala in the United States—$1,452,906.00.  See ECF 181-30 at 9, ¶¶ 19-21.  Bakala trebles those damages under the RICO statute to arrive at his actual damages request of $73,358,718.00.  See 18 U.S.C. § 1964(c).  Bakala additionally requests $2,828,718.00 in attorneys' fees and expenses incurred in prosecuting this lawsuit and a permanent injunction against Krupa to cease his harassment campaign against Bakala.

The Magistrate Judge recommends that the court grant Bakala's motion for default judgment on all claims, schedule an evidentiary hearing to determine the appropriate amount of damages, and order Bakala to show cause as to why injunctive relief is an appropriate remedy under 18 U.S.C. § 1964.  In his response to the R&R, Bakala raises no specific objection and instead notes that while he "has no objection to the Court's conducting an evidentiary hearing," he "believes such a hearing is unnecessary in this case."  ECF No. 198 at 1.  In his response to the R&R, Bakala also includes his arguments regarding his request for injunctive relief.  Krupa failed to respond to Bakala's motion for default judgment and likewise failed to file objections to the R&R.

The court addresses each of Bakala's causes of action below, along with the law regarding appropriate damages for each. Ultimately, the court adopts the R&R's finding that default judgment is appropriate with respect to Bakala's 18 U.S.C. §§ 1962(c) and 1962(d) RICO claims, as well as his state law claims of defamation. The court further adopts the R&R's recommendation to hold an evidentiary hearing to determine the appropriate amount of damages for these claims, since the court "cannot determine [Bakala's] appropriate damages with sufficient certainty based on the documents currently in the record." ECF No. 197 at 22. The court therefore holds the default judgment motion in abeyance with respect to the damages award until such a hearing. The court likewise holds in abeyance the motion for default judgment with respect to Bakala's tortious interference claim because damages is an element of that claim.

### A.  Sections 1962(c) and 1962(d) RICO Claims

First, the court agrees with the R&R that default judgment is appropriate for Bakala's RICO claims under 18 U.S.C. §§ 1962(c) and 1962(d). Section 1962(c) of RICO provides,

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). As the R&R explains, Krupa violated § 1962(c) through his racketeering activities, including mail and wire fraud, in his attempt to extort funds from Bakala. See ECF No. 197 at 6–14. Specifically, Krupa transmitted numerous emails and telephone calls via wire communications in interstate commerce in his attempts to defame Krupa and interfere with his business relations with the intent to extort approximately

$23 million from Bakala.  Section 1962(d) of RICO states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)."  18 U.S.C. § 1962(d).  As set forth in the R&R, Krupa violated § 1962(d) because "[e]ach of the [d]efendants agreed and worked together to develop and implement the scheme of extortion and harassment in order to extort money from [] Bakala and other victims" and "[e]ach of the [d]efendants agreed and participated in the false and defamatory statements made on the StopBakala.org website; the harassing and defamatory phone calls and emails; and the decision to hire fake protestors to protest at [his] home . . . and [at his children's school]."  ECF No. 197 at 15.  After carefully reviewing the applicable laws, the record in this case, and the R&R, the court finds that the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law with respect to Bakala's RICO claims.  The court therefore adopts the R&R in this respect and grants default judgment on Bakala's RICO claims.

Having granted default judgment, the court must next determine the appropriate damages under RICO.  18 U.S.C. § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of § 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fees[.]"   "The Supreme Court has described the penalties authorized by RICO as 'drastic'," because a "successful plaintiff may recover not only costs and attorney's fees, but also treble damages."  US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010) (emphasis in original).  Still, the words "business or property" in § 1964(c) limit the civil remedies available under RICO.  For instance, in RICO cases, "[a]ny allegation of personal

9

injury and pecuniary losses occurring [from a violation of § 1962] are not sufficient to meet the statutory requirement of injury to 'business or property.'" Bast v. Cohen, Dunn & Sinclair, P.C., 59 F.3d 492, 495 (4th Cir. 1995). Therefore, a RICO plaintiff cannot recover damages for any mental or emotional harm suffered as a result of racketeering activities in violation of § 1962. In connection with his RICO claims, Bakala requests actual damages, attorneys' fees, and injunctive relief. The court addresses each request below.

### 1. Actual Damages

Bakala cites no authority to support his argument that he is entitled to the amount that Krupa attempted to extort from him, approximately $23 million, and the court likewise can find no such support under 18 U.S.C. § 1964(c). Treble damages allowed under RICO are "remedial in nature" and designed to provide a remedy for injuries suffered as a result of the prohibited conduct. PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 405–06 (2003). Bakala admits that he did not pay Krupa the approximately $23 million requested in response to his extortion efforts. Bakala does not otherwise argue that he actually lost that sum of money, and the court does not find the amount Krupa attempted to extort from Bakala in any way reflective of Bakala's injuries. As such, an award of $23 million would not be remedial to any actual "business or property" injury suffered by Bakala. Bakala's request for $1,452,906.00 fails for similar reasons. Again, Bakala alleges that Krupa, not Bakala, paid that amount to the Swart Defendants for their participation in the harassment campaign against Bakala in the United States. This amount says nothing about the injury Bakala himself suffered as a result of Krupa's

racketeering activity.  Therefore, the court declines to base damages on either of these amounts.

Otherwise, Bakala alleges in his complaint that, as a result of Krupa's racketeering activity, including extortion, he "fear[ed] for his personal and economic well-being as well as the safety of his family" and suffered "economic injuries to [his] business, property, and reputation."  Amend. Compl. ¶ 112, 119.  Bakala cannot recover under RICO for any personal "fear," emotional anguish, or other mental injury he suffered as a result of Krupa's racketeering activities.  In other jurisdictions, courts have found that injury to an individual's reputation is not compensable under RICO.  See Hamm v. Rhone-Poulenc Rorer Pharms., Inc., 187 F.3d 941, 954 (8th Cir. 1999) ("Damage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of 18 U.S.C. § 1964(c)."); City of Chicago Heights v. Lobue, 914 F. Supp. 279, 285 (N.D. Ill. 1996) (finding that damage to a city's business reputation was not injury to "business or property" compensable under § 1964(c)); In re Teledyne Defense Contracting Derivative Litigation, 849 F. Supp. 1369, 1372 n.1 (C.D. Cal. 1993) (noting injuries to "business reputation" are not cognizable under RICO); Mackin v. Auberger, 59 F. Supp. 3d 528, 558 (W.D.N.Y. 2014) ("Plaintiff's reputation and resulting inability to gain future employment are personal injuries and are not compensable under RICO.").  However, in the only case on point in the District of South Carolina, the court permitted recovery under RICO for damage to an individual's professional or business reputation, but not personal reputation.  See Sadighi v. Daghighfekr, 36 F. Supp. 2d 279, 290 (D.S.C. 1999) ("Loss of business opportunities and damage to professional reputation by fraudulent hiring and harmful employment

11

associations constitute cognizable injuries to business or property, so long as the injuries were proximately caused by predicate racketeering acts such as mail or wire fraud.").

Bakala alleges reputational damage in both a personal and professional capacity. Following Sadighi, Balaka may not recover under RICO for the former, but may recover for the latter.  The predicate acts of mail fraud and wire fraud underlying the § 1962(c) RICO default judgment against Krupa include, inter alia, email communications sent at Krupa's direction to Bakala's business and philanthropical contacts at Dartmouth's Tuck School of Business, The Aspen Institute, The Design Museum, and the Dox Centre, as well as to a potential buyer in one of Krupa's  commercial real estate transactions. Moreover, the email communications contained falsities about Bakala's business dealings, rather than falsities about his personal life.  Therefore, Bakala has sufficiently alleged professional or business reputational damage for which he is entitled to damages under RICO.  However, to the court's knowledge, the only quantifiable evidence of that damage is the amount Bakala spent on "professional services and attorneys' fees to provide clarifications, explanations, and reassurances to his business and professional contacts (e.g., Dartmouth, The Aspen Institute) in response to the false and defamatory emails and harassing phone calls those entities received from the Defendants."  ECF No. 198 at 17–18.  The court therefore will hold an evidentiary hearing where Bakala may provide the amount he spent on such damage control efforts and any other evidence he may have to show or quantify the damage to his professional reputation.

## 2.  Attorneys' Fees

In addition to actual damages, Bakala also requests attorneys' fees under RICO. Section 1964(c) clearly provides the court authority to grant Bakala attorneys' fees in

connection with the instant action. Indeed, once a RICO violation is established, an award of reasonable attorneys' fees is mandatory: "Congress, by using the language 'shall' [in § 1964(c)] clearly established that an award of costs, including a reasonable attorneys' fee, is mandatory." Cargill, Inc. v. WDS, Inc., 2018 WL 1525352, at *18 (W.D.N.C. Mar. 28, 2018) (awarding RICO plaintiffs their attorneys' fees and the necessary expenses associated with the lawsuit). Again, Bakala requests $2,828,817.76 in attorneys' fees and costs. Such an award is appropriate under § 1964(c) if the court finds it reasonable.

To assess the reasonableness of requested attorneys' fees, courts compare the requested amount to the "lodestar" amount. Robinson v. Equifax Info. Serv's., LLC, 560 F.3d 235, 243 (4th Cir. 2009). The lodestar amount equals the reasonable hourly rate multiplied by hours reasonably expended. Id. (citing Grissom v. Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008)). District courts evaluate the reasonableness of both rates and hours through twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 243–44 (quoting Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978)). In exercising its discretion, the court need not rigidly apply each factor. Grayson

<u>Consulting, Inc. v. Cathcart</u>, 2013 WL 436217, at *2 (D.S.C. Feb. 5, 2013); <u>see also</u> <u>PRA Fin. Serv's., LLC v. Autotrakk, LLC</u>, 2018 WL 1472490, at *3 (E.D. Va. Mar. 26, 2018).

Bakala supports his request for attorneys' fees with a declaration from his attorney Marshall Winn of Wyche, P.A. ("Wyche"), detailing, among other things, the attorneys involved, their hourly rates, hours spent with corresponding time entries, and nature of the work performed. ECF No. 181-31, Winn Decl. Winn's declaration includes a 43-page appendix detailing services provided by Wyche during the course of this litigation and a 36-page appendix describing work completed by Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel"). Winn avers in his declaration that the rates charged in this action are standard for legal work of this type and consistent with those charged in cases of comparable complexity in South Carolina and federal courts in the Southeast. However, the appendix of work completed by Quinn Emanuel attorneys does not include the rates charged, therefore the court orders Bakala to produce the same at the evidentiary hearing. At the hearing, Bakala may also present arguments regarding whether Krupa should be responsible for attorneys' fees incurred in connection with Bakala's settlement efforts with the Swart Defendants.

### 3. Injunctive Relief

Bakala additionally requests that the court grant him permanent injunctive relief in connection with his RICO claims and order Krupa "to cease permanently his extortion campaign" against Bakala. ECF No. 181-1 at 18. As statutory authority for his request, Bakala relies on 18 U.S.C. § 1964(a). To analyze Bakala's request for injunctive relief, the court must take a broader look at 18 U.S.C. § 1964, entitled "Civil remedies," which provides the following:

14

(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

(b) The Attorney General may institute proceedings under this section. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . .

18 U.S.C. § 1964 (emphasis added).

Bakala is correct that equitable relief is available generally under subsection (a), which does not distinguish between the different types of civil actions under the statute. However, as the Western District of North Carolina has noted, "a comparison of subsections (b) and (c) reveals that Congress expressly provided for equitable relief in civil RICO actions where the Government commences the action but did not with respect to civil RICO actions initiated by private citizens." R.J. Reynolds Tobacco Co. v. Mkt. Basket Food Stores, Inc., 2007 WL 319965, at *8–9 (W.D.N.C. Jan. 30, 2007). Neither the Supreme Court nor the Fourth Circuit have directly addressed the question of whether a private plaintiff in a civil RICO action is entitled to injunctive relief under 18 U.S.C. § 1964. See Scheidler v. Nat'l Org. For Women, Inc., 537 U.S. 393, 410 (2003) ("We therefore need not address . . . whether a private plaintiff in a civil RICO action is entitled to injunctive relief under 18 U.S.C. § 1964."). Other circuits are divided on the issue.

15

Compare Chevron Corp. v. Donziger, 833 F.3d 74, 140 (2d Cir. 2016) and Nat'l Org. For Women, Inc. v. Scheidler, 267 F.3d 687, 695 (7th Cir. 2001), rev'd on other grounds, 537 U.S. 393 (2003) (holding that injunctive relief is available to a private party under RICO), with Religious Tech. Ctr. v. Wollersheim, 796 F.2d 1076, 1088-89 (9th Cir. 1986), cert. denied, 479 U.S. 1103 (1987) ("[I]njunctive relief is not available to a private party in a civil RICO action.").

Nevertheless, Fourth Circuit dictum indicates that it questions—if not frowns upon—the imposition of equitable remedies in the context of a civil RICO action brought by a private litigant.  In Dan River v. Icahn, the Fourth Circuit considered the district court's grant of injunctive relief sought by a plaintiff pursuant to federal securities laws and RICO.  701 F.2d 278, 290 (4th Cir. 1983).  Discussing the availability of injunctive relief to a private civil litigant under RICO, the Fourth Circuit stated in dicta:

> There is substantial doubt whether RICO grants private parties . . . a cause of action for equitable relief. Section 1964(c) grants private parties a right of action for treble damages against the RICO offender, but the section has nothing to say about injunctive relief. Subsection (b) of section 1964 permits the attorney general to bring proceedings under the Act, and that provision—in sharp contradistinction to § 1964(c)—allows for equitable relief.

Id. at 290 (emphasis added).  The Fourth Circuit explained that to sustain the district court's injunction on RICO grounds, the plaintiff was required to establish that the RICO statute provided authority, whether direct or implied, for equitable relief.  Id.  Without deciding the issue, the Fourth Circuit noted that "the very existence of the uncertainty" weakened plaintiff's claim regarding probability of success.  Id.  The Fourth Circuit found that, in any event, the plaintiff's likelihood of success on the merits of its RICO

claims was slight.  Id. (citing Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assoc., 453 U.S. 1 (1981)).

The Fourth Circuit again questioned the court's legal authority to impose a permanent injunction in a civil RICO action in Johnson v. Collins Entm't Co., 199 F.3d 710, 726 (4th Cir. 1999).  In Johnson, the Fourth Circuit noted that "While section 1964(c) of RICO grants private parties a right to seek treble damages from a RICO violator, it makes no mention whatever of injunctive or declaratory relief."  Id.  The Fourth Circuit reiterated that "[t]here is substantial doubt whether RICO grants private parties . . . a cause of action for equitable relief" and further explained that "[t]his doubt is especially acute in light of the fact that Congress has declined to authorize injunctive remedies for private parties."  Id. (citing Agency Holding Corp. v. Malley–Duff & Assocs., Inc., 483 U.S. 143, 155 (1987) (noting that Congress failed to enact bill that would have permitted private actions for injunctive relief under RICO)).  The Fourth Circuit faulted the district court's reliance on its "inherent equitable power" to issue an injunction and found its need to so rely weighed in favor of abstention by the district court.  Id.; see Potomac Elec. Power Co. v. Elec. Motor and Supply, Inc., 262 F.3d 260, 266 (4th Cir. 2001) (acknowledging question regarding availability of equitable remedies in a private civil RICO action but declining to reach the issue).  Because the Fourth Circuit has expressed doubt that injunctive relief is available to private parties under 18 U.S.C. § 1964, the court denies Bakala's request for the same.

### B. Defamation

The R&R fairly and accurately describes the facts and applies the law regarding Bakala's defamation claim.  Thus, the court adopts the R&R in that regard and, for the

reasons described therein, grants default judgment for Bakala's defamation claim.

See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983) (noting that, in the absence of

specific objections to the R&R, the court is not required to give any explanation for

adopting the same). Having so granted, the court must next determine appropriate

damages.

The tort of defamation allows a plaintiff to recover for injury to his or her

reputation as the result of the defendant's communications to others of a false message

about the plaintiff. Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126 (S.C.

1999). The focus of defamation is not on the hurt to the defamed party's feelings, but on

the injury to his reputation. See Wardlaw v. Peck, 318 S.E.2d 270 (S.C. Ct. App.

1984). Defamation is classified as either actionable per se or not actionable per se. In

South Carolina, statements are actionable per se when they falsely or maliciously charge

a person with the commission of a crime, or distinctly assume or imply one has

committed a crime, or raise a strong suspicion in the minds of hearers or readers that one

has committed a crime, or plainly and falsely charge the contraction of a contagious

disease, adultery or a want of chastity or unfitness in the way of a professional trade.

Lesesne v. Willingham, 83 F.Supp. 918 (D.S.C. 1949); Matthews v. U.S. Rubber Co.,

219 F. Supp. 831, aff'd 332 F.2d 597 (4th Cir. 1963). If the statement is actionable per

se, then "the plaintiff is presumed to have suffered general damages." Erickson v. Jones

Street Publishers, L.L.C., 629 S.E.2d 653, 664 (S.C. 2006). "General damages include

injury to reputation, mental suffering, hurt feelings, emotional distress, and similar types

of injuries which are not capable of definite money valuation." Id. at 664, n.6. "Special

damages are tangible losses or injuries to the plaintiff's property, business, occupation, or profession in which it is possible to identify a specific amount of money as damages." Id.

Krupa's defamatory statements, as detailed in the R&R, qualify as defamation per se because they imply, and indeed directly insist, that Bakala was unfit for his profession and committed crimes. See ECF No. 197 at 16–18. Accordingly, the court presumes that Bakala suffered general damages. Bakala is therefore entitled to damages for his claimed emotional injury, embarrassment, humiliation, and anxiety over the safety of his family and children as a result of Krupa's defamatory statements under South Carolina defamation law. Nevertheless, the court should focus on the injury to Bakala's reputation in awarding damages. See Wardlaw v. Peck, 318 S.E.2d 270 (S.C. Ct. App. 1984). In so doing, the court acknowledges "that a person's reputation is invaluable." Miller v. City of W. Columbia, 471 S.E.2d 683, 687 (S.C. 1996) (finding that a jury award of $1 million for defamation was not excessive).

Bakala does not argue for special damages with respect to his defamation cause of action, as he does not indicate a "tangible loss" to his "property, business, occupation, or profession" in which it is possible to identify a specific amount of money as damages. Erickson, 368 S.C. at 465 n. 6. To the contrary, Bakala asserts that "[i]t is impossible for me to put a precise monetary value upon the damages inflicted upon me by Krupa." ECF No. 181-30, Bakala Decl. at 9. The court believes it prudent to hear from Bakala further regarding the damage to his reputation before it quantifies the same. To the extent Bakala has any additional arguments or evidence that bear on the court's calculation of his general damages, he may provide the same at the evidentiary hearing.

## C.  Tortious Interference

The court declines to adopt the R&R's finding that default judgment is appropriate with respect to Bakala's tortious interference cause of action.  To prove tortious interference, a plaintiff must show (1) the existence of a contract or prospective contract, (2) knowledge of the contract, (3) intentional procurement of its breach, (4) the absence of justification, and (5) resulting damages.  Eldeco, Inc. v. Charleston Cty. Sch. Dist., 642 S.E.2d 726, 731 (S.C. 2007).  A party injured by tortious interference can recover from the tortfeasor: "the pecuniary loss of the benefits of the contract; consequential losses for which the interference is the legal cause; and, emotional distress or actual harm to reputation if they are reasonably to be expected to result from the interference." Collins Music Co. v. Smith, 503 S.E.2d 481, 482 (S.C. Ct. App. 1998) (quoting Ross v. Holton, 640 S.W.2d 166 (Mo. Ct. App.1982)).  When the tortious conduct of a defendant causes a plaintiff to lose prospective profits, the plaintiff may recover such profits when he can prove: (1) it is reasonably certain that such profits would have been realized except for the tort; and (2) such lost profits can be ascertained and measured from the evidence produced with reasonable certainty.  Petty v. Weyerhaeuser Co., 342 S.E.2d 611, 615 (S.C. Ct. App. 1986).  Certainty means the damages may not be left to mere speculation or conjecture.  Id.  However, the law does not require absolute certainty of lost profits but only reasonable certainty that the damages are not purely speculative and there exists a fairly accurate method to estimate the lost profits.  Id; see Vortex Sports & Ent., Inc. v. Ware, 662 S.E.2d 444, 450–51 (S.C. Ct. App. 2008).

On the facts alleged, default judgment is not warranted with respect to Bakala's tortious interference claim. The only contract or prospective contract that Bakala alleges that Krupa interfered with is a potential real estate purchase agreement, which he refers to as the "North-Line transaction." Bakala alleges that, as he was in the process of selling commercial real estate owned by one of his companies for a "substantial sum," Swart, at Krupa's direction, contacted the purchaser in attempt to smear Bakala. Amend. Compl. ¶ 91. Bakala claims that this tortious interference (1) damaged Bakala's business relationships with the purchaser; (2) weakened Bakala's negotiating position with the purchaser; (3) "may result in Mr. Bakala being required to provide additional representations or warranties"; and (4) "may make the purchaser less likely to do business with Bakala in the future." Id. at ¶ 92. Bakala's claims that he "may" suffer certain damages are too speculative for the court to award damages at this juncture. Id. And he provides no evidence to show that his negotiation position was weakened or that his business relationship with the purchaser was damaged. Therefore, to date, Bakala has not satisfied the fifth element of tortious interference—damages—such that the court cannot grant default judgment on the basis of Bakala's complained-of real estate transaction. To the extent that Bakala wishes to provide evidence regarding the measurable effects that Krupa's interference had on the North-Line transaction, he may do so at the evidentiary hearing.

Otherwise, to support his claim of tortious interference, Bakala alleges that Krupa (1) "intentionally contacted numerous individuals at the Aspen Institute, Dartmouth College, and The Design Museum, three institutions with which Mr. Bakala is affiliated, and demanded that he be immediately removed from each respective Board"; (2)

"intentionally contacted Blackstone Group, a multinational private equity and financial services firm, and Round Hill Capital, a global real estate investment firm, to defame Mr. Bakala and interfere with his actual or potential business relationships with those entities"; and (3) "warned investors in Berkshire Hathaway, Wellington Management Company, Fidelity Investments, JP Morgan Chase, and Blackstone about potential negative consequences of doing business with Mr. Bakala, and social media posts by defendants made similar warnings to investors in Citibank and CBRE."  ECF No. 181 at 15.  Bakala alleges that this conduct resulted in injury to his "business relationships."  Id. These allegations fail to support a grant of default judgment on Bakala's tortious interference claim for two reasons.  First, Bakala does not allege that a contract or a prospective contract existed between him and any of the aforementioned entities.  As such, Bakala does not satisfy the first element of tortious interference with respect to these claims.  Second, the damages Bakala claims from this conduct are again speculative.  Bakala does not elaborate on the extent to which his business relationships were injured or, critically, provide any evidence to support or quantify his alleged injuries.  Again, the court will permit Bakala to provide evidence to cure these deficiencies at the evidentiary hearing if he so chooses.  The court will hold the motion for default judgment in abeyance with respect to Bakala's tortious interference claims until that time.

## IV.   CONCLUSION

For the reasons set forth above, the court **ADOPTS IN PART** the R&R, **GRANTS IN PART** the motion for default judgment, and **HOLDS THE MOTION IN**

**ABEYANCE** with respect to the tortious interference claim and the damages award determination until an evidentiary hearing on the matter.

    **AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**August 10, 2021**
**Charleston, South Carolina**